IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF THE FOLLOWING PROPERTIES:<br><br>All moneys up to $10,000.00 in M&T BANK ACCOUNT NUMBER 9872353496, held in the name of Jasmine L Manis Johnson;<br><br>All moneys up to $39,900.00 in M&T BANK ACCOUNT NUMBER 9882873343, held in the name of Aliyou Kamara;<br><br>All moneys up to $10,000.00 in M&T BANK ACCOUNT NUMBER 9876320392 held in the name of Jacqueline N Smith;<br><br>All moneys up to $71,000.00 in M&T BANK ACCOUNT NUMBER 9854548816 held in the name of Elizabeth M Cayanan;<br><br>All moneys up to $25,000.00 in M&T BANK ACCOUNT NUMBER 9875555436 held in the name of Joyce McCosker;<br><br>All moneys up to $29,900.00 in M&T BANK ACCOUNT NUMBER 9870035582 held in the name of Adewale Olaiya;<br><br>All moneys up to $149,900.00 in M&T BANK ACCOUNT NUMBER 9851232984 held in the name of Johnny Insurance Agency Inc. (UBO John C Ndingsa); and<br><br>All moneys up to $106,400.00 in CAPITAL ONE BANK ACCOUNT NUMBER 1361424133 held in the name of Janet Import & Export. | ___ FILED   ___ ENTERED<br>___ LOGGED   ___ RECEIVED<br><br>8:28 am, Mar 15 2021<br>AT BALTIMORE<br>CLERK, U.S. DISTRICT COURT<br>DISTRICT OF MARYLAND<br>BY _____Deputy<br><br><br><br><br><br>Case Nos.  1:21-mj-608 TMD<br>1:21-mj-609 TMD<br>_____ |

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT**

I, Rahul Vinayak, a Special Agent with the United States Secret Service, being duly sworn, depose and state:

1

1:21-mj-608 to -609 TMD

## AGENT'S BACKGROUND

1. I am a duly appointed Special Agent with the United States Secret Service ("USSS") and have been employed as such since April 2019. Through my employment with the USSS, I have gained knowledge in the use of various investigative techniques including the utilization of physical surveillance, undercover agents, confidential informants and cooperating witnesses, consensually monitored recordings, investigative interviews, financial investigations, the service of administrative and grand jury subpoenas, mobile wireless tracking methods, analyzing telephone pen register and caller identification system data, and the execution of search and arrest warrants, including those executed upon physical addresses as well as those executed upon electronic equipment and data storage providers.

2. Throughout my career in law enforcement, I have become familiar with the methods and techniques associated with financial institution fraud and counterfeit trends and tactics. In the course of my training and conducting financial investigations, I have incorporated the use of the following investigative techniques: interviewing informants, cooperating witnesses, victims, and subjects; physical surveillance and utilization of various surveillance techniques; supporting undercover operations; participating in mobile wireless tracking missions; and preparing and executing search and arrest warrants that have led to seizures of counterfeit currency, access devices, and other instruments used to commit financial fraud.

3. Based on my knowledge, training, and experience in the investigation of financial institution fraud, I am familiar with the ways in which fraudsters conduct their business. My familiarity includes the various means and methods by which individuals defraud financial institutions; their use of cellular telephones and social media accounts to facilitate fraud; and

their use of code words to describe fraud. I am familiar with the ways that those who commit financial institution fraud are able to carry out their fraud without detection. Financial institution fraud is commonly an ongoing and recurring criminal activity. As contrasted with crimes against persons, which tend to be discrete offenses, crimes such as bank fraud and wire fraud are illicit commercial activities that are characterized by regular, repeated criminal activity.

4.  The information set forth below is based upon my review of records and upon information provided by other sworn law enforcement officers participating in this investigation. I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary foundation for the issuance of the seizure warrant for the aforementioned funds.

## PURPOSE OF THE AFFIDAVIT

5.  I submit this affidavit in support of the application made by the United States of America for a seizure warrant authorizing the seizure of the funds held by M&T Bank ("M&T") and Capital One Bank ("Capital One") in the accounts listed in Attachment A1 (pertaining to M&T) and Attachment A2 (pertaining to Capital One) to this Affidavit, up to the amounts identified in column B (the second column from the left) of Attachment A1 and Attachment A2.

6.  The accounts listed in Attachment A1 and Attachment A2 have all been identified by M&T or Capital One as having fraudulently received Small Business Administration (SBA) Economic Injury Disaster Loan (EIDL) payments via ACH or wire transfer. Each of these accounts has a Maryland address listed for the account holder. Accordingly, as explained in more detail below, the funds held in the accounts listed in Attachment A1 and Attachment A2 contain proceeds obtained from wire fraud offenses subject to seizure in this district.

## APPLICABLE LAW

7. Based on the information set forth below, there is probable cause to believe that the funds held in the subject accounts contain proceeds of substantive violations of 18 U.S.C. § 1343 (wire fraud), and are, therefore, subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

8. Wire fraud is defined in 18 U.S.C. § 1343, which provides, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice," shall be guilty of a federal offense.

9. The Court's authority to order forfeiture of the proceeds of violations of 18 U.S.C. § 1343 is found in 18 U.S.C. § 981(a)(1)(C). Section 981(a)(1)(C) provides for the civil forfeiture of any property, real or personal, which constitutes or is derived from proceeds from any offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7). A "specified unlawful activity," as defined in § 1956(c)(7)(D), includes offenses listed in 18 U.S.C. § 1961(1). Specifically, 1961(1) includes violations of 18 U.S.C. § 1343.

10. Recognizing that money is fungible, 18 U.S.C. § 984 provides that, in a civil forfeiture action against funds in an account in a financial institution, the United States need not identify the specific funds involved in the criminal offense. Rather, "any identical property found in the same account shall be subject to forfeiture," so long as the action against the funds is commenced within "1 year from the date of the offense." 18 U.S.C. § 984. In other words, the

United States may forfeit any funds in an account, even if the funds currently in the account were not involved in the relevant criminal activity, so long as the funds forfeited do not exceed the total amount of dirty funds deposited into the account within the past year.

11.     Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized via a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe that the property is subject to forfeiture.

## OVERVIEW OF SBA LOAN FRAUD

12.     As part of the CARES Act, the Small Business Administration (SBA) started two programs, the Economic Injury Disaster Loan (EIDL) and the Economic Injury Disaster Grant (EIDG) programs. Both programs were created to provide economic relief to businesses experiencing a temporary loss of revenue due to COVID-19. EIDLs were created to provide small businesses with working capital for the continuation of health care benefits, rent, utilities, and fixed debts. The funds are disbursed directly from the SBA, with a maximum loan amount equal to six months of working capital. EIDGs are an advance of funds provided to EIDL applicants, with a maximum advance of $10,000.

13.     The process to apply for SBA's EIDL and EIDG starts on the SBA's website. An application is created and self-certified by the applicant. The applicant self-certifies that they meet the following eligibility criteria:

    i. Business was in operation on February 1, 2020;[1]

---

[1] A business is considered "in operation" if it is registered with a state's department of labor and is in good standing. A business "in operation" cannot be in forfeited, inactive, or bankrupt status.

5

    ii. Application is for a small business, a private non-profit organization with IRS designation 501(c), (d), or (e), a private non-profit doing business under State law, or a faith-based organization; and

    iii. Business must have acceptable credit history and ability to repay the loan.

14. Once an application is self-certified, SBA reviews and processes the application. SBA obtains supporting documentation (payroll forms, tax forms, etc.) from the applicant. The applicant receives a link from SBA to electronically sign loan documents and provide banking information. Once the documents are signed, the loan is funded and the payment is sent via ACH to the applicant's bank account. The SBA processing center is located in Colorado.

15. There is no explicit requirement that the funds have to go into a business bank account. However, if the funds are to be deposited into a personal bank account, the account holder has to be associated with the business that made the application.[2]

16. Common fraud indicators that are seen with EIDLs and EIDGs include:

    i. New Employer Identification Numbers (EIN) on the loan applications;

    ii. EINs of businesses not in good standing being used;

    iii. Fake businesses established using stolen identities;

    iv. Immediate overseas wire transfers of the loan funds;

    v. Romance scams and social media solicitations that persuade people to provide personally identifiable information to "get free money." The information is

---

[2] According to an SBA Information Notice dated July 22, 2020, "[A]ll proceeds are deposited ONLY into the verified Financial Institution account belonging to the eligible applicant or borrower. For the purposes of the EIDL program, a verified Financial Institution account is a depository institution account using the Employer Identification Number or Social Security Number entered by the applicant or borrower in the EIDL loan application."

        then used to apply for SBA loans and portions of the proceeds go to the ringleader;

  vi. False statements on loan applications;

 vii. Fraudulent supporting documents provided to the SBA (payroll forms, tax forms);

viii. Inflation of payroll; and

  ix. Misuse of proceeds.

17. The above fraud indicators are derived from the SBA's rules of eligibility. The eligibility criteria are stated on the SBA application. If an account is flagged as fraudulent by a financial institution due to one of the above fraud indicators, the case is referred to law enforcement to further assess eligibility.

## PROBABLE CAUSE

18. Below are explanations of the SBA loan fraud M&T or Capital One identified in the accounts listed in Attachment A1 and Attachment A2. Most cases share common fraud indicators, including false statements on loan applications, new EINs on the loan applications, and romance scams. In all cases, rapid cash withdrawals and/or withdrawals using mobile payment services (e.g. CashApp or Venmo) were made as soon as the SBA EIDG/EIDL money was deposited.

    a. M&T Bank account number ending in 3496 has an account holder of J.J. and is a personal bank account. On June 30, 2020, this account received an SBA EIDG ACH deposit. A law enforcement database search yielded no results for the business listed both on the SBA EIDG application and as the ACH "remit to" business. Rapid

    withdrawals from the account occurred as soon as the SBA EIDG posted. Based on these facts and my training and experience, I conclude J.J. obtained SBA EIDG funds based on the following false or fraudulent statements on the online SBA EIDG application: the business on the application was affiliated with J.J. and in existence as of February 1, 2020.

b. M&T Bank account number ending in 3343 has an account holder of A.K. and is a personal bank account. On July 6, 2020, this account received an SBA EIDL ACH deposit. A law enforcement database search yielded no results for the business listed both on the SBA EIDL application and as the ACH "remit to" business. Rapid withdrawals from the account occurred as soon as the SBA EIDL posted. Based on these facts and my training and experience, I conclude A.K. obtained SBA EIDL funds based on the following false or fraudulent statements on the online SBA EIDL application: the business on the application was affiliated with A.K. and in existence as of February 1, 2020.

c. M&T Bank account number ending in 0392 has an account holder of J.S. and is a personal bank account. On July 10, 2020, this account received an SBA EIDG ACH deposit. A law enforcement database search yielded no results for the business listed both on the SBA EIDG application and as the ACH "remit to" business. Rapid withdrawals from the account occurred as soon as the SBA EIDG posted. Based on these facts and my training and experience, I conclude J.S. obtained SBA EIDG funds based on the following false or fraudulent statements on the online SBA EIDG

application: the business on the application was affiliated with J.S. and in existence as of February 1, 2020.

d. M&T Bank account number ending in 8816 has an account holder of E.C. and is a personal bank account. On July 13, 2020, this account received an SBA EIDL ACH deposit. A law enforcement database search yielded no results for the business listed both on the SBA EIDL application and as the ACH "remit to" business. Rapid withdrawals from the account occurred as soon as the SBA EIDL posted. Further investigation confirmed E.C. fell victim to a romance scam and allowed an unknown individual to use her M&T Bank account number ending in 8816. Based on these facts and my training and experience, I conclude the SBA EIDL funds in E.C.'s account were obtained based on the following false or fraudulent statements on the online application: the business on the application was affiliated with E.C. and in existence as of February 1, 2020.

e. M&T Bank account number ending in 5436 has an account holder of J.M. and is a personal bank account. On July 14, 2020, this account received an SBA EIDL ACH deposit. A law enforcement database search yielded no results for the business listed on the SBA EIDL application. Rapid withdrawals from the account occurred as soon as the SBA EIDL posted. Further investigation confirmed J.M. fell victim to a romance scam and allowed an unknown individual to use her M&T Bank account number ending in 5436. Based on these facts and my training and experience, I conclude the SBA EIDL funds in J.M.'s account were obtained based on the

    following false or fraudulent statements on the online application: the business on the application was affiliated with J.M. and in existence as of February 1, 2020.

f. M&T Bank account number ending in 5582 has an account holder of A.O. and is a personal bank account. On August 12, 2020, this account received an SBA EIDL ACH deposit. A law enforcement database search yielded no results for the business listed both on the SBA EIDL application and as the ACH "remit to" business. Rapid withdrawals from the account occurred as soon as the SBA EIDL posted. Based on these facts and my training and experience, I conclude A.O. obtained SBA EIDL funds based on the following false or fraudulent statements on the online SBA EIDL application: the business on the application was affiliated with A.O. and in existence as of February 1, 2020.

g. M&T Bank account number ending in 2984 has an account holder of J.N. On December 11, 2020, this account received an SBA EIDL ACH deposit. The ACH remit to name stated a business with the name of Jonny Insurance Company. This business was registered in the State of Maryland to J.N. on May 18, 2005 and forfeited on October 5, 2007. It was registered again on October 7, 2010 and forfeited again on October 1, 2012.[3] The SBA loan application for this loan stated a gross revenue for Jonny Insurance Company of $59,603,000.00 despite that a forfeited business should not generate any revenue. Investigation into tax documents J.N. provided to SBA revealed a personal gross income for J.N. of $59,604.00 in 2019.

---

[3] According to the Maryland Department of Assessment & Taxation, "'forfeited' means the right of the entity to conduct business in the State of Maryland has been relinquished and it has no right to use its name. For domestic corporations, this also means that the business has no existence under the laws of the State of Maryland." Maryland State Department of Assessments & Taxation, Business Entity Status Form (rev. Mar. 2020), https://dat.maryland.gov/businesses/Documents/entitystatus.pdf.

Rapid withdrawals from the account occurred as soon as the SBA EIDL posted. Based on these facts and my training and experience, I conclude J.N. obtained SBA EIDL funds based on the following false or fraudulent statements on the online SBA EIDL application: the business on the application was in existence as of February 1, 2020 and had a gross revenue of $59,603,000.00.

h. Capital One Bank account number ending in 4133 has an account holder of J.O.A. and is a business account in the name of business J.I.E. On June 29, 2020, this account received an SBA EIDL ACH deposit. A law enforcement database search yielded no results for the business listed both on the SBA EIDL application and as the ACH "remit to" business. The business J.I.E. has no verifiable relationship to J.O.A. Rapid withdrawals from the account occurred as soon as the SBA EIDL posted. J.O.A. stated to bank employees that the SBA EIDL funds were going to be sent overseas. Bank employees stated that J.O.A. was being coached by a third party during the withdrawals. Based on these facts and my training and experience, I conclude J.O.A. obtained SBA EIDL funds based on the following false or fraudulent statements on the online SBA EIDL application: the business on the application was affiliated with J.O.A. and in existence as of February 1, 2020.

## CONCLUSION

19. Based on the foregoing, I submit that there is probable cause to believe that the funds held in the subject bank accounts are forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) as derived from proceeds traceable to violations of 18 U.S.C. § 1343 (Wire Fraud).

20. Wherefore, it is hereby requested that Special Agents of the United States Secret Service be authorized to seize, pursuant to 18 U.S.C. § 981(b), the funds in the accounts listed in Attachment A1 and Attachment A2.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

                                                  Respectfully submitted,

                                                  Rahul Vinayak
                                                  Special Agent
                                                  United States Secret Service

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this __3__ day of March 2021.

The Honorable Thomas M. DiGirolamo
United States Magistrate Judge

1:21-mj-608 to -609 TMD

Attachment A1

| Deposit Date | Total Deposit from SBA | M&T Bank Account # | Fraud Indicators/Reason(s) for Seizure | Account Holder Name | Account Primary Address |
|---|---|---|---|---|---|
| 6/30/2020 | $10,000.00 | 9872353496 | SBA EIDG with no business associated with account holder. Deposit came in Jasmine Johnson's name. Rapid withdrawals. | Jasmine L Manis Johnson | 9805 Bethesda Church Rd #202 Damascus, MD |
| 7/6/2020 | $39,900.00 | 9882873343 | SBA EIDL with no business associated with account holder. Deposit came in Whisper Hill Farms's name. No relationship to account holder. Rapid Withdrawals. | Aliyou Kamara | 8437 Kendall Ct Laurel, MD |
| 7/10/2020 | $10,000.00 | 9876320392 | SBA EIDG with no business associated with account holder. Deposit came in Jacqueline Smith's name. Rapid withdrawals. | Jacqueline N Smith | 4800 Dromoland Ct Apt C Owings Mills, MD |
| 7/13/2020 | $71,000.00 | 9854548816 | SBA EIDL with no business associated with account holder. Deposit came in Kalanq Vegetable Oil's name. No relationship to account holder. Romance Scam. Rapid Withdrawals. | Elizabeth M Cayanan | 10326 Greenside Drive Cockeysville, MD |
| 7/14/2020 | $25,000.00 | 9875555436 | SBA EIDL with no business associated with account holder. Deposit came in Cody Bingham Farm's name. No relationship to account holder. Romance Scam. Rapid Withdrawals. | Joyce McCosker | 2027 Connolly Rd Fallston, MD |
| 8/12/2020 | $29,900.00 | 9870035582 | SBA EIDL with no business associated with account holder. Deposit came in Adeqale Olaiya's name. Rapid Withdrawals. | Adewale Olaiya | 4406 Kavon Ave Baltimore, MD |
| 12/11/2020 | $149,900.00 | 9851232984 | SBA EIDL with inflated revenue listed on the application. Deposit came in Johnny Insurace Agency's name. Business is forfeited. Rapid Withdrawals. | Johnny Insurance Agency Inc. (UBO John C Ndingsa) | 13210 Idlewild Dr Bowie, MD |

1:21-mj-608 to -609 TMD

Attachment A2

| Deposit Date | Total Deposit from SBA | Capital One Bank Account # | Fraud Indicators/Reason(s) for Seizure | Account Holder Name | Account Primary Address |
|---|---|---|---|---|---|
| 6/29/2020 | $106,400.00 | 1361424133 | SBA EIDL with no business associated with account holder. Deposit came in Janet Import and Export's name. Customer was being coached by a 3rd party. Rapid withdrawals. | Janet Import & Export | 905 Phillip Power Dr Apt 100 Laurel, MD |